IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **DENISE S. HALL,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 22-cv-2656 |
| ) | |
| **I.Q. DATA INTERNATIONAL,** ) | |
| **INCORPORATED,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER GRANTING MOTION TO DISMISS AND GRANTING LEAVE TO AMEND**

Before the Court is Defendant I.Q. Data International, Inc.'s ("IQ Data") May 22, 2023 Motion to Dismiss for lack of jurisdiction. (ECF No. 20.) Plaintiff Denise S. Hall responded on June 20, 2023. (ECF No. 23.) Defendant replied on July 5, 2023. (ECF No. 24.) For the following reasons, the Motion to Dismiss is GRANTED. Plaintiff's complaint is DISMISSED without prejudice. Because Plaintiff may be able to establish jurisdiction by amending her complaint, leave to amend is GRANTED.

**I. Background**

IQ Data is a debt collector that works to collect consumer debts on behalf of various clients, who generally retain

ownership of the debt.[1] (ECF No. 1 at ¶¶ 5, 15-16; No. 12 at ¶ 5.) Beginning in approximately July 2022, IQ Data began contacting Plaintiff about a debt she allegedly owed on an apartment lease. (ECF No. 1 at ¶¶ 7, 9.) On first speaking with Defendant, Plaintiff advised that she was out of work and could not pay. (Id. at ¶ 10.) She inquired about the availability of a payment plan and "was told that she would be able to set up payment arrangements when able." (Id. at ¶¶ 10, 11.)

Toward the end of July, Plaintiff contacted Defendant to set up the payment plan. (Id. at ¶ 12.) Defendant refused to allow Plaintiff to enter a payment plan although it had previously represented that would be possible. (Id. at ¶¶ 20-21.) Defendant demanded payment in full by August 1 and said that, if Plaintiff failed to pay by that date, the debt would be reported on her credit. (Id. at ¶ 21.) Defendant said that the debt would accrue interest every day and that, if Plaintiff delayed payment, she would never be able to pay off the debt because of the accruing interest. (Id. at ¶ 22.) Defendant's employee was rude and aggressive on the call, and when Plaintiff asked to be treated with respect, the employee suggested that Plaintiff did

---

[1] For purposes of this Motion, facts are taken from Plaintiff's complaint, ECF No. 1, and are presumed to be true.

not deserve respect because of her debt.[2] (Id. at ¶¶ 13, 18-19.) Defendant threatened to sue Plaintiff if she did not pay, despite the fact that Defendant did not own the debt and could not sue. (Id. at ¶¶ 14-16.) Eventually, Defendant hung up on Plaintiff. (Id. at ¶ 23.) When Plaintiff called back, Defendant hung up on her again. (Id. at ¶ 24.)

According to the complaint, Defendant regularly tells consumers that payment plans are available to induce them to gather what funds they can. (Id. at ¶ 26.) Then, when consumers ask to set up a payment plan, Defendant refuses to honor its prior representations and, by demanding payment in full, seeks to obtain as much money from the consumer as possible. (Id. at ¶ 27.) If, as a result of this ploy, Defendant receives no payment, or only partial payment, it routinely allows consumers to go on a payment plan. (Id. at ¶ 31.)

Plaintiff alleges that, during some unspecified period, Defendant made numerous calls to Plaintiff even after being told to stop. (Id. at ¶ 54.) Plaintiff asserts that Defendant called Plaintiff's girlfriend numerous times without consent and told the girlfriend that Plaintiff owed the debt. (Id. at ¶ 55.)

---

[2] Plaintiff describes the substance of her conversation with IQ Data in general terms and does not quote what was said by either party. (ECF No. 1 at ¶¶ 10-23.)

3

Plaintiff does not allege that she made any payment on the debt that Defendant was attempting to collect. (ECF No. 1.)

Plaintiff sues Defendant under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. (ECF No. 1 at ¶¶ 40, 43, 47.) She alleges that Defendant's rudeness, incessant calls, and deceptive conduct violate the FDCPA. (Id. at ¶¶ 41-56.)

Defendant moves to dismiss for lack of jurisdiction. (ECF No. 20-1.) Defendant asserts that Plaintiff lacks standing to sue because her complaint does not allege any injury sufficient to establish a case or controversy under Article III of the Constitution. (Id. at PageID 90-91.) Plaintiff argues that she has standing because (1) Defendant's allegedly harassing and deceptive conduct caused her emotional injury, (2) Defendant's failure to honor its promise to make a payment plan available caused additional interest to accrue on her debt, and (3) Plaintiff relied, to her detriment, on Defendant's promise by ignoring other financial obligations to gather money for a payment plan. (ECF No. 23 at PageID 103, 105.)

**II. Federal Question Jurisdiction**

Plaintiff asserts a cause of action under the FDCPA, a federal statute. The Court has federal question jurisdiction under 28 U.S.C. § 1331.

4

**III. Standard of Review**

    **A. Motion to Dismiss**

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[3] (ECF No. 20-1.) "To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." Butt ex rel. Q.T.R. v. Barr, 954 F.3d 901, 904 (6th Cir. 2020) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Although Twombly's plausibility requirement is most familiar in the context of a Rule 12(b)(6) motion testing whether a complaint has stated facts entitling the plaintiff to relief under the pertinent substantive law, plaintiffs must also plausibly allege standing. Ass'n of Am. Physicians & Surgeons v. FDA, 13 F.4th 531, 543 (6th Cir. 2021). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that" the defendant is liable or that the plaintiff has standing. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556); see Ass'n of

---

[3] Defendant argues for the first time in its reply brief that Plaintiff's complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. (ECF No. 24 at PageID 110-114; see No. 20-1.) New arguments cannot be raised in a reply brief. E.g., Hicks v. City of Millersville, No. 3:21-cv-00837, 2022 U.S. Dist. LEXIS 150107, at *21 n.6 (M.D. Tenn. Aug. 22, 2022). The Court will not consider the arguments about Plaintiff's purported failure to state a claim.

5

Am. Physicians, 13 F.4th at 543-44. The "plaintiff's obligation to provide the grounds of his entitlement to relief [or of standing] requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements [or of the elements of standing] will not do." Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Twombly, 550 U.S. at 555).

Where the defendant is not mounting a factual attack on jurisdiction, the court considers the plaintiff's complaint in the light most favorable to the plaintiff. Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001). Although the court accepts as true all factual allegations and draws all reasonable inferences in favor of the plaintiff, it does not accept legal conclusions or unwarranted factual inferences. Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008).

**B. Subject Matter Jurisdiction**

Jurisdiction is a court's power to hear and decide a case. Siding & Insulation Co. v. Acuity Mut. Ins. Co., 754 F.3d 367, 375 (6th Cir. 2014). Federal courts are courts of limited jurisdiction and may exercise the judicial power only to the extent authorized by Congress and the Constitution. Id. Absent jurisdiction, a case must be dismissed. Id. The party asserting jurisdiction has the burden of establishing it. Gaetano v. United States, 994 F.3d 501, 505 (6th Cir. 2021).

Review of a motion to dismiss for lack of jurisdiction depends on whether the motion mounts a facial or factual attack. Id. In a factual attack, the party moving to dismiss may use affidavits or other documents outside the pleadings to dispute the existence of particular facts supporting jurisdiction. Id. There is no presumption that the allegations in the complaint are true. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). The district court resolves competing evidence and makes findings of fact, which are reviewed by an appellate court for clear error. Gaetano, 994 F.3d at 505.

In a facial attack, the movant accepts the allegations in the complaint as true. Enriquez-Perdomo v. Newman, 54 F.4th 855, 861 (6th Cir. 2022). Reasonable inferences are drawn in favor of the nonmovant. Mosley v. Kohl's Dep't Stores, Inc., 942 F.3d 752, 756 (6th Cir. 2019). The movant challenges only the sufficiency of the complaint -- that is, whether the facts alleged, taken as true, establish jurisdiction under the applicable law. Newman, 54 F.4th at 861.

**IV. Analysis**

Defendant raises a facial challenge to Plaintiff's standing. (ECF No. 20-1.) Standing is a jurisdictional matter and "has three well-known requirements: (1) the plaintiff must have suffered an 'injury in fact'; (2) that injury must have been 'caus[ed]' by the defendant's conduct; and (3) the injury

7

must be 'redress[able] by a favorable decision.'" Bearden v. Ballad Health, 967 F.3d 513, 516 (6th Cir. 2020) (alterations in original) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). The principal issue in this case is whether Plaintiff has suffered an injury in fact. (ECF No. 20-1 at PageID 84-85; No. 23 at PageID 99.)

"To establish an injury in fact, plaintiffs must show that they suffered 'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Bearden, 967 F.3d at 516 (quoting Lujan, 504 U.S. at 560-61). An injury is actual or imminent when it has already been suffered or is "certainly impending." Id. (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way" and "concrete" if it is "'de facto'; that is, it must actually exist." Spokeo Inc. v. Robins, 578 U.S. 330, 339-40 (2016) (first quoting Lujan, 504 U.S. at 560 n.1; then citing De facto, Black's Law Dictionary (10th ed. 2014)).

The conduct about which Plaintiff complains -- that is, Defendant's allegedly harassing phone calls and deceptive statements -- has already occurred. (ECF No. 1 at ¶¶ 9-31.) Therefore, the injury Plaintiff has suffered, if any, is "actual" rather than "conjectural or hypothetical." Bearden, 967 F.3d at

8

516 (quoting Lujan, 504 U.S. at 560). Plaintiff's claimed injury is also particularized in that she alleges phone calls and misleading representations made specifically to her in an attempt to collect a debt she owed. (ECF No. 1 at ¶¶ 7-24.)

The question, then, is whether Plaintiff has suffered a concrete injury. A concrete injury is "real, and not abstract." TransUnion, LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021) (quoting Spokeo, 578 U.S. at 340). Tangible harms, such as personal injuries, damage to physical property, and monetary loss are concrete injuries. Id. However, an injury need not be tangible to serve as the basis for a constitutional case or controversy. Id. Intangible injuries, such as damage to one's reputation or intrusion on one's privacy, may also be injuries in fact. Id.

In deciding whether a particular type of intangible harm can create standing, the Supreme Court has instructed lower courts to consider whether that harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Spokeo, 578 U.S. at 341. A "bare procedural violation, divorced from any concrete harm" of the type traditionally recognized in law, does not create standing to sue. Id. Congress' judgment as to what constitutes an injury is "instructive and important," but Congress may not force the courts to decide a case in the complete

absence of an injury similar to those for which courts have typically provided redress. Id.

Congress may, however, "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." Id. (alteration in original) (quoting Lujan, 504 U.S. at 578). In other words, Congress can confer standing on an individual whose injury, although roughly of the type traditionally recognized by courts, would otherwise have been deemed too trivial or too dissimilar to a recognized type of harm to be redressed in the absence of a statute. See TransUnion, 141 S. Ct. at 2205, 2208-09.

As an illustration of these principles, the Supreme Court concluded in TransUnion LLC v. Ramirez that the defendant concretely injured the plaintiffs by misleadingly suggesting to various businesses that the plaintiffs were on a list of "terrorists, drug traffickers, [and] other serious criminals." Id. at 2201, 2208-09. The mistaken identification, which plaintiffs alleged was a violation of the Fair Credit Reporting Act, was a concrete injury because it was similar to the tort of defamation. Id. at 2200, 2208-09. When the defendant responded that it only identified plaintiffs as "potential match[es]" for the list and that its statements were therefore not false, as required for a defamation claim, the Court concluded that it made no difference. Id. at 2209. For a plaintiff to have standing

based on a statutory violation, the plaintiff's harm need not be an "exact duplicate" of a harm traditionally recognized by courts, but need only have a "close relationship" to such a harm. Id.

Applying these precedents, the Sixth Circuit has found that a plaintiff "does not automatically have standing simply because Congress authorizes a plaintiff to sue a debt collector for failing to comply with the FDCPA." Ward v. NPAS, Inc., 9 F.4th 357, 361 (6th Cir. 2021). An FDCPA plaintiff must show "either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury." Id.

Plaintiff relies on three bases to confer standing: the emotional injury inflicted by Defendant's calls, the additional interest accrued on the debt Defendant was trying to collect because of Defendant's refusal to place Plaintiff on a payment plan, and Plaintiff's detrimental reliance on Defendant's promise of payment plan, which resulted in Plaintiff's neglecting other debts. (ECF No. 23 at PageID 98.)

**A. Emotional Injury**

The Sixth Circuit has acknowledged that emotional distress can serve as an injury in fact. For instance, in Gerber v. Herskovitz, 14 F.4th 500, 504, 506 (6th Cir. 2021), the court found that Jewish congregants' allegations of extreme emotional

11

distress established standing where anti-Israel protesters picketed outside a synagogue for 935 weeks while carrying signs with language like "Jewish Power Corrupts" and "No More Holocaust Movies."

The Sixth Circuit has cautioned, however, that not every emotional injury is cognizable under Article III. A "bare allegation of anxiety is an intangible harm without 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit.'" Garland v. Orlans, PC, 999 F.3d 432, 439 (6th Cir. 2021) (quoting Spokeo, 578 U.S. at 341). "[A] general allegation of emotional harm like anxiety or distress" falls short of the severe distress required in tort law and does not establish standing.[4] Id. at 440. Were it otherwise, the slightest emotional disturbance could form the basis for a federal lawsuit, and "everyone would have standing to litigate about everything." Id. (quoting Brunett v. Convergent Outsourcing, Inc., 982 F.3d 1067, 1068 (7th Cir. 2020)).

Plaintiff's complaint does not allege an emotional injury sufficient to create standing. The complaint makes bare assertions that Plaintiff was "[f]rustrated, distressed[, and] concerned" about Defendant's conduct and that Plaintiff

---

[4] The Sixth Circuit acknowledged that Congress could elevate an otherwise non-cognizable emotional harm to an injury in fact. See Garland, 999 F.3d at 440. The court found, however, that nothing in the FDCPA showed that Congress intended to do so. Id.

12

"suffered . . . emotional distress, . . . anxiety, [and] fearfulness." (ECF No. 1 at ¶¶ 32, 34.) Plaintiff asserts that the numerous calls she and her girlfriend received "served to worry . . . confuse . . . and humiliate" her. (Id. at ¶¶ 54-55.) Although Plaintiff alleges some level of emotional injury caused by Defendant's actions, the allegations in her complaint do not rise to the extreme level of emotional distress that has been held to be an injury in fact.

Plaintiff's response to the Motion to Dismiss argues that Defendant's conduct shows that Plaintiff suffered an adequate emotional injury. (See ECF No. 23 at PageID 100-01.) Plaintiff is correct that whether there is standing depends "both on [the] defendant's conduct and how that conduct impacts [the] plaintiff." Garland, 999 F.3d at 439 n.4.

Nothing in the complaint, however, demonstrates that Defendant's conduct was so outrageous that it would typically be expected to result in extreme emotional distress. The complaint says that Defendant called Plaintiff numerous times to collect a debt, that Defendant's employee was rude and hung up on Plaintiff, that Defendant misled Plaintiff about the availability of a payment arrangement, and that Defendant improperly called Plaintiff's girlfriend and disclosed Plaintiff's debt. (ECF No. 1 at ¶¶ 9-24, 54-55.) These allegations reflect poorly on Defendant and might cause some

13

degree of irritation, confusion, and worry. Defendant's activities do not, however, rise to the level of outrageous conduct that would typically result in extreme emotional distress. See Van Vleck v. Leiken, Ingber, & Winters, P.C., No. 22-1859, 2023 U.S. App. LEXIS 10455, at *18-19 (6th Cir. Apr. 27, 2023) (holding, in FDCPA case, that process server's actions in serving papers, though "in conflict with court and state regulations," was not so outrageous as to inflict extreme emotional distress and create standing).

Because Plaintiff does not allege she suffered extreme emotional distress and because the Court cannot infer that distress from Defendant's conduct, Plaintiff has not suffered an emotional injury sufficient to create standing under Article III of the Constitution.

**B. Accrual of Interest on the Disputed Debt**

Plaintiff argues that Defendant injured Plaintiff by refusing to allow her to enter into a payment plan. (ECF No. 23 at PageID 103-04.) Plaintiff asserts that, had she been placed on a payment plan when she called Defendant in July 2022, Plaintiff would have avoided additional interest that later accrued on her debt. (Id.; see also ECF No. 1 at ¶¶ 10-13, 22, 29.) Plaintiff is correct that the accrual of additional interest on a plaintiff's debt resulting from a defendant's unlawful actions can serve as an injury in fact for standing purposes.

14

See Chuluunbat v. Weltman, Weinberg & Reis Co., No. 21-1584, 2022 U.S. App. LEXIS 13713, at *7 (7th Cir. May 20, 2022); TransUnion, 141 S. Ct. at 2204 ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury.").

Plaintiff fails to establish standing, however, because she does not adequately allege that Defendant had any obligation to offer Plaintiff a payment plan. Generally, a party is not required to settle or compromise a legal dispute. Goss Graphics Sys., Inc. v. DEV Indus., Inc., 267 F.3d 624, 627 (7th Cir. 2001) (collecting cases for the proposition that federal courts "have no authority to force a settlement"); Cohen v. Cohen, No. 02A01-9303-CV-00050, 1994 Tenn. App. LEXIS 48, at *6 (Ct. App. Feb. 7, 1994) (finding no authority requiring party to accept an offer of settlement). Before its alleged promise to Plaintiff, Defendant was under no obligation to settle Plaintiff's disputed debt by offering a payment plan. Plaintiff cites no case or principle of law to the contrary. (ECF No. 23 at PageID 103-04.)

Plaintiff implicitly argues that, once Defendant had promised to make a payment plan available, it was obligated to follow through or make a false representation prohibited by the FDCPA. Id.; see also 15 U.S.C. § 1692e. The argument, although not explicitly made by Plaintiff in these terms, is essentially that (1) Defendant promised a payment plan, (2) the FDCPA forbids

15

false representations, so that Defendant was obligated to keep its promise, and (3) because Defendant failed to keep its legally enforceable promise, additional interest accrued on Plaintiff's debt, thereby injuring Plaintiff and creating standing.

Whether the FDCPA makes a debt collector's promise enforceable in some or all circumstances (as opposed, for example, to providing statutory damages) appears to be a question of first impression. Neither the parties' briefing nor the Court's own research provides a clear answer.[5]

Assuming, however, that a promise to offer a payment plan would be enforceable, Plaintiff has not established standing because she does not adequately allege that Defendant made, and then broke, any promise. The complaint recounts only that Plaintiff "was told that she would be able to set up payment arrangements when able." (ECF No. 1 at ¶ 11.) Plaintiff does not allege what, specifically, Defendant's employee said about a payment plan. (ECF No. 1.) Plaintiff does not allege whether the employee used definite, certain language or made a vague allusion to the possibility of an payment plan, whether the purported promise included a particular date by which the plan might be

---

[5] Not all promises made by a debt collector are enforceable under the FDCPA. Van Hoven v. Buckles & Buckles, P.L.C., 947 F.3d 889, 894 (6th Cir. 2020) (stating that immaterial false statements do not violate the FDCPA); see also id. ("A debt collector who promises to send dunning letters in one font but uses another . . . [does] not [violate] the Act.").

16

made available, or whether the term "when able," if the employee used it, meant when Plaintiff was financially able, or when she would be "able" to start a payment plan under the debt collector's rules. These details are left unsaid. (Id.) Even drawing reasonable inferences in favor of Plaintiff, see Mosley, 942 F.3d at 756, the complaint does not allege facts sufficient to conclude that Defendant made a definite promise of a payment plan and violated that promise. Absent such allegations, Plaintiff cannot establish standing because she cannot show that her purported injury (the increased interest on the debt at issue) is traceable to a legal wrong of the Defendant (its violation of a legally binding promise of a payment plan).[6]

**C. Detrimental Reliance**

Plaintiff argues that she has standing because she relied, to her detriment, on Defendant's assurances that she would be placed on a payment plan. (ECF No. 23 at PageID 104.) Plaintiff asserts, in her response to the Motion to Dismiss, that she "made efforts to collect sufficient sums [to take advantage of the prospective payment plan], at the dereliction of other obligations to which such money could have been diverted." (Id.

---

[6] As discussed below, Plaintiff will be allowed to amend her complaint to attempt to show standing. If she does so, Plaintiff may renew her arguments based on the increased interest on the disputed debt. In that case, Plaintiff should be prepared to show that the FDCPA makes a promise by a debt collector legally enforceable (as opposed to providing only statutory damages).

17

at PageID 105.) Seeking to show that her injury is of the type "that has traditionally been regarded as providing a basis for a lawsuit," Plaintiff analogizes her reliance on Defendant's assurances to fraud and equitable estoppel. Spokeo, 578 U.S. at 341.

Plaintiff's argument is not well-taken for two reasons. First, Plaintiff's theory of detrimental reliance suffers from the same flaw as her reliance on the increased interest on the debt Defendant was trying to collect. For the reasons already discussed, Plaintiff has not adequately alleged that Defendant's employee made any statement or promise on which she could reasonably rely. Both fraud and equitable estoppel generally require reasonable reliance on the alleged misrepresentation. See Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC, 491 F.3d 522, 527 (6th Cir. 2007) (fraud); Mich. Express, Inc. v. United States, 374 F.3d 424, 427 (6th Cir. 2004) (equitable estoppel). Absent well-pleaded facts showing that Defendant promised a payment plan, Plaintiff cannot successfully contend that she relied on that promise to the detriment of her other interests.

Second, although Plaintiff's claim that she neglected her other debts and presumably incurred additional interest on them so that she could gather money for a payment plan carries some weight, that allegation appears only in Plaintiff's response to

18

the Motion to Dismiss. (ECF No. 23 at PageID 105.) It does not appear in the complaint. (ECF No. 1.) "The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint." Kostrzewa v. City of Troy, 247 F.3d 633, 643 (6th Cir. 2001). Because the critical facts supporting jurisdiction are not in the complaint, Plaintiff has not established standing on a theory of detrimental reliance.

Although Plaintiff has failed to establish standing on a theory of detrimental reliance, she may be able to do so by amending her complaint. Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2); PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 698 (6th Cir. 2004) (stating that courts frequently grant leave to amend when dismissing a complaint), abrogated on other grounds by Frank v. Dana Corp., 646 F.3d 954, 961 (6th Cir. 2011). Leave to amend is appropriate here.

## V. Conclusion

For the foregoing reasons, Plaintiff has not adequately alleged that she has standing under any of the three theories in her response to the Motion to Dismiss. Because Plaintiff has not carried her burden to establish standing, the Motion to Dismiss, ECF No. 20, is GRANTED. Plaintiff's complaint is DISMISSED without prejudice for lack of jurisdiction.

Because it appears that Plaintiff may be able to establish standing under one or more of her theories if she is allowed to amend her complaint, leave to amend is GRANTED. Plaintiff may file an amended complaint within twenty-one days of the entry of this Order. If she fails to file within that time, the Court will enter judgment dismissing her case without prejudice.

SO ORDERED this 7th day of September, 2023.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE