**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| **DENISE S. HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 2:22-cv-02656-SHM-cgc** |
| | ) | |
| **I.Q. DATA INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**ORDER GRANTING MOTION TO DISMISS FOR LACK OF JURISDICTION**

Plaintiff Denise S. Hall has filed an Amended Complaint against I.Q. Data International, Inc. ("IQ Data"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e-f ("FDCPA"). (ECF No. 26.) Before the Court is Defendant's October 12, 2023 Second Motion to Dismiss for Lack of Jurisdiction (the "Motion").[1] (ECF Nos. 27, 28.) Plaintiff responded on November 30, 2023. (ECF No. 31.) For the following reasons, the Motion is GRANTED and Plaintiff's Amended Complaint is DISMISSED with prejudice.

---

[1] Defendant's Motion is docketed at ECF No. 27. An identical Motion with a supporting memorandum of law is docketed at ECF No. 28. The reasoning in this Order applies with equal force to ECF Nos. 27 and 28.

**I.    Background**

Plaintiff filed her first complaint (the "Complaint") on September 26, 2022.  (ECF No. 1.)  Plaintiff alleged that, beginning in approximately July 2022, Defendant[2], a debt collector, began contacting Plaintiff about a debt she owed on an apartment lease. (Id. at ¶¶ 7, 9.) On first speaking with Defendant, Plaintiff advised that she was out of work and could not pay. (Id. at ¶ 10.) She inquired about the availability of a payment plan and "was told that she would be able to set up payment arrangements when able." (Id. at ¶¶ 10, 11.)

Plaintiff contacted Defendant in late July, and Defendant reneged on its promise to allow Plaintiff to enter a payment plan.  (Id. at ¶¶ 20-21.) Defendant demanded payment in full by August 1 and said that, if Plaintiff failed to pay by that date, the debt would be reported on her credit. (Id. at ¶ 21.) Defendant said that the debt would accrue interest every day and that, if Plaintiff delayed payment, she would never be able to pay off the debt because of the interest. (Id. at ¶ 22.)

According to Plaintiff, Defendant regularly tells consumers that payment plans are available to induce them to gather what funds they can.  (Id. at ¶ 26.)  Then, when a

---

[2]  Plaintiff does not identify any of the individual employees with whom she spoke.  The word "Defendant" is used interchangeably to refer to Defendant as a corporate entity and to any of the employees or representatives with whom Plaintiff had contact.

consumer asks to set up a payment plan, Defendant refuses to honor its prior representations and, by demanding payment in full, seeks to obtain as much money from the consumer as possible. (Id. at ¶ 27.)  If, as a result of this ploy, Defendant receives no payment, or only partial payment, it routinely allows consumers to go on a payment plan. (Id. at ¶ 31.)  Plaintiff does not allege that she made any payment on the debt that Defendant was attempting to collect. (See generally id.)  Plaintiff asks the court to "[d]eclare" that Defendant's actions violate the FDCPA and award statutory and actual damages. (Id. at 9.)

On May 22, 2023, Defendant moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction. (ECF No. 20.)  The Court granted Defendant's motion on September 7, 2023, finding that Plaintiff had not demonstrated standing to sue because she had not shown an injury in fact. (ECF No. 25.) The Court found that the additional interest Plaintiff accrued between the date Defendant allegedly offered Plaintiff a payment plan and the date it reneged on that offer was not an injury for standing purposes.[3]  (Id. at 14-17.)  The Court

_____

[3] The Court also considered whether Plaintiff had established standing based on: (1) the emotional distress caused by Defendant's conduct, or (2) her detrimental reliance on Defendant's promised payment plan, which caused her to neglect other debts while she gathered money to make her first payment. (ECF No. 25 at 11-14, 17-19.)  Because Plaintiff no

noted initially that the accrual of interest can be an injury in fact sufficient to establish standing. (Id. at 14-15.) It concluded, however, that Plaintiff had failed to establish standing because she had not shown that Defendant was legally obligated to offer her a payment plan in the first place. (Id. at 15.)

The Court considered whether, once Defendant had promised to make a payment plan available, it had to provide that plan to avoid making a false representation in violation of the FDCPA. (Id.) The Court construed Plaintiff's filings to make the following argument: (1) Defendant offered Plaintiff a payment plan; (2) the FDCPA prohibits debt collectors from making false or misleading statements; (3) if Defendant did not ultimately enroll Plaintiff in a payment plan, Defendant's original promise was misleading; (4) the only way for Defendant to avoid liability under the FDCPA at this point was to offer Plaintiff the payment plan, so that its prior promise would not be misleading; (5) Defendant's failure to provide a payment plan, as required by the FDCPA, allowed additional interest to accrue on Plaintiff's debts; and (6) that interest was a monetary injury conferring standing. (Id. at 15-16.)

_____

longer asserts standing based on emotional injury or detrimental reliance, the Court need not address those issues here.

The Court opined that "[n]either the parties' briefing nor the Court's own research provides a clear answer" about whether the FDCPA makes a debt collector's promises enforceable. (Id. at 16.) Even assuming, however, that Defendant's alleged promise to provide Plaintiff with a payment plan was legally enforceable, the Court concluded that Plaintiff had not established standing. (Id.) It found that Plaintiff's assertion that she "was told that she would be able to set up payment arrangements" was too vague to determine whether "Defendant made a definite promise of a payment plan and violated that promise." (Id. at 17.) Absent clearer allegations, the Court concluded, Plaintiff could not show that any injury was traceable to Defendant's conduct. (Id. at 16-17.) The Court granted Plaintiff leave to amend and instructed her that, if she sought to renew her arguments based on increased interest, she "should be prepared to show that the FDCPA makes a promise by a debt collector legally enforceable (as opposed to providing only statutory damages)." (Id. at 17 n.6.)

Plaintiff filed her Amended Complaint on September 28, 2023. (ECF No. 26.) Plaintiff has dropped her allegations that Defendant engaged in rude and harassing behavior in violation of § 1692d of the FDCPA and raises claims only under §§ 1692e and 1692f. (ECF No. 1 at ¶¶ 40-42; No. 26 at

¶¶ 25-32.)   Defendant filed a Motion to Dismiss the Amended Complaint on October 12, 2023, and Plaintiff responded on November 30, 2023.  (ECF Nos. 27, 28, 31.)

## II.  Federal Question Jurisdiction

Plaintiff asserts a cause of action under the FDCPA, a federal statute.  The Court has federal question jurisdiction under 28 U.S.C. § 1331.

## III. Standard of Review

### A.  Motion to Dismiss

"To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." Butt ex rel. Q.T.R. v. Barr, 954 F.3d 901, 904 (6th Cir. 2020) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Although Twombly's plausibility requirement is most familiar in the context of a Rule 12(b)(6) motion testing whether a complaint has stated facts entitling the plaintiff to relief under the pertinent substantive law, plaintiffs must also plausibly allege standing. Ass'n of Am. Physicians & Surgeons v. FDA, 13 F.4th 531, 543 (6th Cir. 2021).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that" the defendant is liable or that the plaintiff has standing. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

6

(citing Twombly, 550 U.S. at 556); see Ass'n of Am. Physicians, 13 F.4th at 543-44.  The "plaintiff's obligation to provide the grounds of his entitlement to relief [or of standing] requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements [or of the elements of standing] will not do." Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Twombly, 550 U.S. at 555).

**B.   Subject Matter Jurisdiction**

Jurisdiction is a court's power to hear and decide a case. Siding & Insulation Co. v. Acuity Mut. Ins. Co., 754 F.3d 367, 375 (6th Cir. 2014). Federal courts are courts of limited jurisdiction and may exercise the judicial power only to the extent authorized by Congress and the Constitution. Id. Absent jurisdiction, a case must be dismissed. Id. The party asserting jurisdiction has the burden of establishing it. Gaetano v. United States, 994 F.3d 501, 505 (6th Cir. 2021).

Review of a motion to dismiss for lack of jurisdiction depends on whether the motion mounts a facial or factual attack. Id. In a factual attack, the party moving to dismiss may use affidavits or other documents outside the pleadings to dispute the existence of particular facts supporting jurisdiction. Id. There is no presumption that the allegations in the complaint are true. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007).

In a facial attack, the movant accepts the allegations in the complaint as true. Enriquez-Perdomo v. Newman, 54 F.4th 855, 861 (6th Cir. 2022). Reasonable inferences are drawn in favor of the nonmovant. Mosley v. Kohl's Dep't Stores, Inc., 942 F.3d 752, 756 (6th Cir. 2019). The movant challenges only the sufficiency of the complaint -- that is, whether the facts alleged, taken as true, establish jurisdiction under the applicable law. Newman, 54 F.4th at 861. Although the court accepts as true all factual allegations and draws all reasonable inferences in favor of the plaintiff, it does not accept legal conclusions or unwarranted factual inferences. Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008).

**IV.  Analysis**

Defendant raises a facial challenge to Plaintiff's standing. (ECF No. 20-1). Standing is a jurisdictional matter and "has three well-known requirements: (1) the plaintiff must have suffered an 'injury in fact'; (2) that injury must have been 'caus[ed]' by the defendant's conduct; and (3) the injury must be 'redress[able] by a favorable decision.'" Bearden v. Ballad Health, 967 F.3d 513, 516 (6th Cir. 2020) (alterations in original) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). The principal issues in this case are whether Plaintiff has suffered an injury in fact and, if so, whether

that injury was caused by Defendant's conduct. (ECF No. 28-1 at 4-6; ECF No. 31 at 4).

"To establish an injury in fact, plaintiffs must show that they suffered 'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Bearden, 967 F.3d at 516 (quoting Lujan, 504 U.S. at 560-61). An injury is actual or imminent when it has already been suffered or is "certainly impending." Id. (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way" and "concrete" if it is "'de facto'; that is, it must actually exist." Spokeo Inc. v. Robins, 578 U.S. 330, 339-40 (2016) (first quoting Lujan, 504 U.S. at 560 n.1; then citing De facto, Black's Law Dictionary (10th ed. 2014)).

The conduct about which Plaintiff complains -- that is, Defendant's deceptive statements -- has already occurred. (ECF No. 26 at ¶¶ 7-24.) Therefore, the injury Plaintiff has suffered, if any, is "actual" rather than "conjectural or hypothetical." Bearden, 967 F.3d at 516 (quoting Lujan, 504 U.S. at 560). Plaintiff's claimed injury is also particularized in that she alleges the phone calls and misleading representations were made specifically to her in an attempt to collect a debt she owed. (ECF No. 26 at ¶¶ 7-24.)

9

The question, then, is whether Plaintiff has suffered a concrete injury. A concrete injury is "real, and not abstract." TransUnion, LLC v. Ramirez, 594 U.S. 412, 424 (2021) (quoting Spokeo, 578 U.S. at 340). Tangible harms, such as personal injuries, damage to physical property, and monetary loss are concrete injuries. Id. However, an injury need not be tangible to serve as the basis for a constitutional case or controversy. Id. Intangible injuries, such as damage to one's reputation or intrusion on one's privacy, may also be injuries in fact. Id.

In deciding whether a particular type of intangible harm can create standing, the Supreme Court has instructed lower courts to consider whether that harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Spokeo, 578 U.S. at 341. A "bare procedural violation, divorced from any concrete harm" of the type traditionally recognized in law, does not create standing to sue. Id. Congress' judgment as to what constitutes an injury is "instructive and important," but Congress may not force the courts to decide a case in the complete absence of an injury similar to those for which courts have typically provided redress. Id.

Congress may, however, "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." Id. (alteration in original)

10

(quoting Lujan, 504 U.S. at 578). In other words, Congress can confer standing on an individual whose injury, although roughly of the type traditionally recognized by courts, would otherwise have been deemed too trivial or too dissimilar to a recognized type of harm to be redressed in the absence of a statute. See TransUnion, 594 U.S. at 424-26.

As an illustration of these principles, the Supreme Court concluded in TransUnion LLC v. Ramirez that the defendant had concretely injured the plaintiffs by misleadingly suggesting to various businesses that the plaintiffs were on a list of "terrorists, drug traffickers, [and] other serious criminals." Id. at 2201, 2208-09. That mistaken identification, which plaintiffs alleged was a violation of the Fair Credit Reporting Act, was a concrete injury because it was similar to the tort of defamation. Id. at 2200, 2208-09. When the defendant responded that it had only identified plaintiffs as "potential match[es]" for the list and that its statements were therefore not false, as required for a defamation claim, the Court concluded that it made no difference. Id. at 2209. For a plaintiff to have standing based on a statutory violation, the plaintiff's harm need not be an "exact duplicate" of a harm traditionally recognized by courts, but need only have a "close relationship" to that harm. Id.

Applying these precedents, the Sixth Circuit has found that a plaintiff "does not automatically have standing simply because Congress authorizes a plaintiff to sue a debt collector for failing to comply with the FDCPA." Ward v. NPAS, Inc., 9 F.4th 357, 361 (6th Cir. 2021). An FDCPA plaintiff must show "either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury." Id.

### A.   Plaintiff Has Suffered a Concrete Injury

Plaintiff does not argue that Defendant's alleged procedural violations are concrete injuries of the sort traditionally recognized.[4]   (See generally ECF No. 31.)   She asserts that Defendant's violations caused her independent

---

[4] Although Plaintiff does not argue that Defendant's alleged violations are injuries of the kind traditionally recognized by common law, she repeatedly emphasizes that Defendant's conduct was the type of behavior that the FDCPA was designed to address.   (ECF No. 31 at 4, 6-7, 10).   The Sixth Circuit formerly applied the rule that a bare procedural violation could create a concrete harm for standing purposes, where the harm was the "type of harm the [statute] was designed to prevent."   Lyshe v. Levy, 854 F.3d 855 at 859 (6th Cir. 2017); Garland v. Orlans, PC, 999 F.3d 432, 437 (6th Cir. 2021).   That rule was abrogated by TransUnion, 594 U.S. at 437, which held that the risk of future harm is not concrete unless the harm has materialized or "the plaintiffs were independently harmed by their exposure to the risk itself."   Ward, 9 F.4th at 361.   Plaintiff's argument that Defendant's conduct was the kind of behavior the FDCPA was designed to penalize is not relevant to the Court's standing analysis.

concrete injury.  (Id. at 2.)  Specifically, she asserts that Defendant injured her by refusing to allow her to enter into a payment plan, and that, had she been placed on a payment plan when she called Defendant in July 2022, she would have avoided additional interest that later accrued on her debt.  (Id. at 4-5).  Plaintiff is correct that the accrual of additional interest on a plaintiff's debt resulting from a defendant's unlawful actions can serve as an injury in fact for standing purposes.  See Chuluunbat v. Weltman, Weinberg & Reis Co., No. 21-1584, 2022 WL 1599325, at *7 (7th Cir. May 20, 2022)[5]; TransUnion, 594 U.S. at 425 ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury.").

The Court's prior order noted that interest can be an injury conferring standing, but the Court dismissed Plaintiff's Complaint because her allegations about interest were too

---

[5] Defendant's attempts to distinguish Chuluunbat are not persuasive.  (ECF No. 28-1 at 10.)  Defendant explains that, in Chuluunbat, the plaintiff was confused about whether interest was accruing on his debt and that the debt collector's misrepresentations caused him to reject a favorable settlement offer and prioritize paying a debt with a lower interest rate. (Id.); 2022 WL 1599325 at *3-4.)  Defendant asserts that it was the plaintiff's loss of the settlement offer, rather than the accrual of interest, that conferred standing.  (ECF No. 28-1 at 10.)  However, the Seventh Circuit describes the accrued interest and the expiration of the settlement offer as separate injuries.  Chuluunbat, 2022 WL 1599325 at *4 ("[T]he interest is *not the only injury*: Chuluunbat *also* let the time-sensitive settlement offer . . . lapse") (emphasis added).

vague.  (ECF No. 25 at 16.)  The Court found that Plaintiff did "not adequately allege that Defendant made, and then broke, any promise" because Plaintiff did not explain "whether the employee used definite, certain language or made a vague allusion to the possibility of a payment plan" or "whether the purported promise included a particular date by which the plan might be made available."  (Id. at 16-17.)  Plaintiff's Amended Complaint contains new details about the conversation in which Defendant allegedly offered her a payment plan, details not included in her original Complaint.  (ECF No.  26 at ¶¶ 12-18.)

Specifically, Plaintiff alleges that, on or about July 21, 2023, Plaintiff asked Defendant if it could agree on a payment plan, and Defendant told Plaintiff she "can do [a] payment plan."  (Id.)  Plaintiff alleges that Defendant said that any plan would be based on the debt owed at the time the plan was arranged, and, thus, interest would no longer accrue.[6] (Id. at 3.)  Plaintiff alleges that, when she asked if all she had to do was call back to set up the payment plan, Defendant responded "correct."  (Id.)  Plaintiff concludes that, when she

---

[6] Defendant asserts that Plaintiff "does not allege that IQ Data offered to freeze interest if she entered into" a payment plan.  (ECF No. 28-1 at 7.)  To the contrary, Plaintiff specifically pled that she and Defendant agreed to a payment plan "tied to the balance of the debt at the time the payment plan was arranged" so that "the debt would stop accruing interest."  (ECF No. 26 at ¶ 3.)

called Defendant back at the end of July, Defendant reneged on its promise and demanded full payment.  (Id.)

These additional facts, although somewhat sparse, address the Court's earlier concerns.  Plaintiff now alleges that Defendant specifically told Plaintiff that she "can do" a plan, which, viewing the facts in the light most favorable to Plaintiff, is the "definite, certain language," that would lead a consumer to believe a payment plan was available.  (ECF No. 25 at 16-17; 26 at ¶¶ 12-18.)  Plaintiff also alleges that the only requirement to initiate the plan was to call back and that any such plan would be based on the present balance of debt without the additional accrual of interest.  (ECF No. 26 at ¶¶ 12-18.)

Defendant argues that the Amended Complaint does not state "the amount of payments due, the length of the payment plan's term, or the date that it was to conclude," and that Plaintiff had not shown that Defendant's actions were "materially false or misleading" such that they would confuse "the least sophisticated consumer."  (ECF No. 28-1 at 7-8.)  These questions speak to whether Plaintiff has adequately pled the elements of an FDCPA violation and would be more appropriate in a Rule 12(b)(6) motion to dismiss for failure to state a claim. Defendant has not raised any arguments under Rule 12(b)(6) or cited relevant caselaw. See, e.g., Twombly, 550 U.S. at 556.

The relevant question for standing purposes is whether Plaintiff has pled sufficient facts to allege an injury that is concrete, particularized, actual, and imminent. <u>TransUnion</u>, 594 U.S. at 423.  Whether that injury rises to the level of an FDCPA violation is a merits question that need not be resolved at the standing stage. <u>Grow Michigan, LLC v. LT Lender, LLC</u>, 50 F.4th 587, 592-93 (6th Cir. 2022) (distinguishing between the definition of causation for standing purposes and what must be proven at the merits stage); <u>see, e.g</u>, <u>Rieves v. Town of Smyrna</u>, 67 F.4th 856, 862 (6th Cir. 2023)(distinguishing what a plaintiff must prove to prevail on the merits "under the applicable legal standard," and what a plaintiff must prove to establish standing).  Plaintiff's allegations are sufficiently detailed for the Court to infer that Defendant offered her a payment plan under certain conditions and then revoked its offer, during which time additional interest on her debt had accrued.  That is enough for the Court to infer that Plaintiff was injured, even if additional details would be required to survive a motion to dismiss.

### B.  Plaintiff's Injury Was Not Caused By Defendant's Conduct Because the FDCPA Does Not Provide Relief

To meet the constitutional requirements of standing, Plaintiff must show that any injury suffered was caused by Defendant's conduct. <u>Bearden</u>, 967 F.3d at 516 (alterations in

original) (quoting Lujan, 504 U.S. at 560-61).  The parties
agree that Defendant had no obligation to offer Plaintiff a
payment plan to resolve her debt.  (ECF No. 28-1 at 6-8; No. 31
at 8.)  The parties dispute whether, once Defendant had offered
Plaintiff a payment plan, it was obligated to follow through in
order to avoid liability for making a false statement under the
FDCPA.  (ECF No. 28-1 at 7-8; No. 31 at 10.)   Whether
Plaintiff's injury is caused by Defendant's conduct turns on
whether Defendant was obligated to provide such a payment plan.

In its order dismissing Plaintiff's Complaint, the Court
opined that whether the FDCPA makes a debt collector's promise
enforceable in some or all circumstances appears to be a
question of first impression.  The Court instructed Plaintiff
that, if she renewed her arguments based on increased interest
in her Amended Complaint, she "should be prepared to show that
the FDCPA makes a promise by a debt collector legally
enforceable (as opposed to providing only statutory damages)."
(ECF No. 25 at 17 n. 6.)  Plaintiff has not done so.

Plaintiff argues that the plain language of the FDCPA
permits courts to enforce the promises of debt collectors
because the FDCPA provides for both actual and statutory
damages.  (ECF No. 31 at 10.)  Actual damages "would include
benefit of the bargain damages, and putting a non-breaching
party in the position it would have been but-for the breach."

(Id.)   Giving Plaintiff the benefit of her bargain, she reasons, would require enforcing the proposed payment plan and compensating her for any additional interest accrued because Defendant did not provide the plan.  (Id.)  It is unclear whether Plaintiff is arguing that putting her in the position she would have been but-for the breach means compensating her for the additional interest, or ordering specific performance by requiring Defendant to offer Plaintiff the plan on its original terms.

In her Response in Opposition to Defendant's Motion to Dismiss, Plaintiff repeatedly refers to "enforce[ing]" Defendant's promised payment plan.  (ECF No. 31 at 2, 8, 10.) Plaintiff's Amended Complaint, however, describes this case as an "action for damages."  (ECF No. 26 at ¶ 26.)  In her request for relief, Plaintiff seeks "statutory and actual damages." (Id. at 5.)   The Amended Complaint does not reference injunctive relief.  (Id. at 5-6.)  The Court understands Plaintiff's Amended Complaint to seek only statutory damages and actual damages for the accrual of interest based on Defendant's alleged deception, not the enforcement of the payment plan Defendant allegedly offered.

Plaintiff has not cited any binding authority for her proposition that the term "actual damages" includes "benefit of the bargain" damages and, thus, damages based on the accrual of

additional interest.[7] Black's Law Dictionary defines "actual damages" as the "amount awarded to a complainant to compensate for a proven injury or loss." Damages, Black's Law Dictionary (12th ed. 2024). "Benefit of the bargain damages" is defined separately, as the damages "that a breaching party to a contract must pay to the aggrieved party, equal to the amounts that the aggrieved party would have received, including profits, if the contract had been fully performed," also known as "expectation loss." Id. The dictionary does not provide guidance about if or when the terms "actual damages" and "benefit of the bargain damages" overlap.

The Restatement 2d of Contracts discusses actual and benefit of the bargain damages in separate subsections. Section 347(a) of the Restatement explains that "[c]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." "Actual loss" is defined separately, in § 347(e). The Restatement goes on to say that the party's actual loss may be less than the party's expectation damages if, for example, "he makes an especially

---

[7] The only authority Plaintiff cites is a 2015 case from the Texas Court of Appeals, which is not persuasive and does not bind this or any other federal court. (ECF No. 31 at 10.)

19

favorable substitute transaction, so that he sustains a smaller loss than might have been expected." This distinction suggests that benefit of the bargain or expectation damages may be broader than actual damages, and that the authorization of actual damages does not necessarily mean that the prevailing party is entitled to the benefit of her bargain. Id.

The Supreme Court has opined that "the precise meaning of the term [actual damages] changes with the specific statute in which it is found." FAA v. Cooper, 566 U.S. 284, 292 (2012) (internal citations, quotation marks omitted) (discussing when actual damages can include nonpecuniary harm). Although the Supreme Court has emphasized that the term "actual damages" has a "chameleon-like quality," based on "the particular context in which the term appears," Plaintiff has not provided any statutory analysis about the meaning of "actual damages" in the FDCPA. Plaintiff has not cited -- and the Court has not found -- any FDCPA cases opining on the statutory definition of "actual damages," or granting a plaintiff expectation damages to recover the benefit of her bargain.[8]

---

[8] Actual damages in FDCPA cases typically consist of any out-of-pocket expenses plus compensation for emotional distress. For example, in Blevins v. MSV Recovery, LLC, No. 1:19-cv-276, 2020 WL 4365634, at *4 (S.D. Ohio Jul. 30, 2020), the court awarded actual damages based on the plaintiff's emotional distress and economic loss. The economic damages were to compensate the plaintiff for the $100 fee he spent consulting a lawyer about declaring bankruptcy. Id. The court

Even if the Court were to read Plaintiff's Complaint to seek specific performance, she has not shown that actual or benefit-of-the-bargain damages includes specific performance. Damages are specifically defined as monetary compensation. Damages, Black's Law Dictionary (12th ed. 2024). The dictionary defines "benefit-of-the-bargain damages" as "[d]amages that a breaching party to a contract **must pay** to the aggrieved party." Id. (emphasis added.) "Enforcement by Award of Damages" and "Enforcement by Specific Performance and Injunction" are separate topics in the Restatement 2d of Contracts. Compare §§ 346-56 with §§ 357-69.

Plaintiff cites no case where a court enforced a debt collector's promise because reneging on that promise would violate the FDCPA. The Court's own research has found no such case.[9]  (ECF No. 26 at 16.)  Considering whether specific

---

described this fee as "just the type of 'out-of-pocket' expense compensable as actual damages under the FDCPA." Id.; see also Davis v. Creditors Interchange Receivable Management, LLC, 585 F.Supp.2d 968 (N.D. Ohio 2008) (explaining that the "FTC Commentary to the FDCPA states that these 'actual damages' for FDCPA violations include 'damages for personal humiliation, embarrassment, mental anguish, or emotional distress' as well as 'out-of-pocket expenses'"); Hoffman v. GC Services Ltd. Partnership, No. 3:08-cv-255, 2010 WL 9113645, at *17 (E.D. Tenn. 2010); Avery v. Client Resolution Management, LLC, No. 1:20-cv-01612, 2020 WL 11613184 (N.D. Ohio Dec. 17, 2020).

[9] Not all promises made by a debt collector are enforceable under the FDCPA. Van Hoven v. Buckles & Buckles, P.L.C., 947 F.3d 889, 894 (6th Cir. 2020) (stating that immaterial false statements do not violate the FDCPA); see also id. ("A debt collector who promises to send dunning letters in

performance is available as a remedy for a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-17 (1974), the United States District Court for the Eastern District of Texas found that the plaintiff was not entitled to specific performance because specific performance is an equitable remedy available only in breach-of-contract cases. Hollenshead v. Bank of America, N.A., No. 4:18-CV-00724-ALM-CAN, 2020 WL 4615096, at *10 (E.D. Tex. May 19, 2020).

In the majority of FDCPA cases where a plaintiff seeks specific performance, the plaintiff is also pursuing claims for breach of contract or on a promissory estoppel theory. Kemboi v. Ocwen Loan Servicing, LLC, Nos. 3:11-CV-36(L), 3:11-CV-37, 2012 WL 2571287, at *5 (N.D. West Virginia Jul. 2, 2012); In re JP Morgan Chase Mortg. Modification Litigation, 880 F.Supp.2d 220, 238-44 (D. Mass. 2012); Tedder v. Deutsche Bank Nat. Trust Co., 863 F.Supp.2d 1020, 1033-40 (D. Haw. 2012); Scholastic Services, Inc. v. First Midwest Bancorp, Inc., No. 2:15-CV-211, 2015 WL 5772526, at *2 (N.D. Ind. Sept. 30, 2015); Hollenshead v. Bank of America, N.A., No. 4:18-CV-724, 2020 WL 3496335, at *1 (E.D. Tex. June 29, 2020). Plaintiff is not pursuing breach-of-contract or promissory estoppel claims. She only seeks relief under the FDCPA.

---

one font but uses another . . . [does] not [violate] the Act.").

Plaintiff bears the burden of establishing jurisdiction. Gaetano, 994 F.3d at 505. Absent caselaw establishing that debt collectors must honor promises where necessary to avoid FDCPA liability, or that the FDCPA implicitly makes a debt collector's promises enforceable by granting plaintiffs the benefit of their bargain or specific performance as part of actual damages, Plaintiff can obtain no relief under the FDCPA. She lacks standing to pursue this action.

### V. Conclusion

Plaintiff has not adequately alleged that she has standing. She has plausibly alleged that the interest that accrued on her debt is an injury for standing purposes. However, Plaintiff has not shown that her injury was caused by Defendant's conduct because Defendant was not obligated to provide a payment plan. The FDCPA does not allow specific performance or the damages that Plaintiff seeks.

Because Plaintiff has not carried her burden to establish standing, the Motion to Dismiss, ECF Nos. 27 and 28, is GRANTED.

SO ORDERED this 29th day of August, 2024.

*/s/ Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE